# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULA DANCHUK,<br><br>                   Plaintiff,<br>    v.<br>THE MAYOR AND COUNCIL OF THE BOROUGH OF MOUNT ARLINGTON,<br><br>                   Defendants. | Action No. 2:15-cv-2028 (CLW)<br><br>**<u>OPINION</u>** |

**THIS MATTER** comes before the Court on the parties' competing motions for summary judgment. The Court declined to hear oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and, for the reasons set forth below, denies Plaintiff's motion and grants Defendants' motion.

## I.    Background

This case arises out of what may charitably be described as a fraught relationship between Plaintiff, a former Councilwoman for the Borough of Mount Arlington, and her counterparts in governance, the Council and Mayor, during Plaintiff's tenure on the Council. Plaintiff is a resident of the Borough of Mount Arlington who developed an interest in local politics—an interest that led her first to join the Concerned Active Residents of Mount Arlington (CARMA) and then to run successfully for a seat on the Council. (Def. Statement of Facts, ECF No. 35-2, Pl. Resp. to Def. Statement of Facts, ECF No. 40, ¶¶ 1-3, 8, 11-25.) Plaintiff assumed her seat in 2011 and, soon thereafter, certain points of contention developed among the parties, including whether Plaintiff improperly discussed confidential law enforcement contract negotiations with her husband, id. ¶¶ 28-41, and whether Plaintiff improperly applied to positions within the Borough while holding her position on the Council. (Pl. Statement of Facts, ECF No. 36-4, Def. Resp. to Pl. Statement of

Facts, ECF No. 39-2, ¶¶ 11-12.) In addition, from late 2013 through 2014, Plaintiff took issue with Defendants' conduct and made the following allegations of wrongdoing to the Morris County Prosecutor's Office (MCPO): Defendants discussed public session issues during closed executive sessions; the Mayor violated the Mount Arlington sign ordinance with respect to posting campaign signs; Defendants attended a public hearing in a neighboring town. (Def. Statement of Facts, ECF No. 35-2, Pl. Resp. to Def. Statement of Facts, ECF No. 40, ¶¶ 42-43, 46-48, 54, 57.) While the parties dispute the finer details of the complaints, bases therefor, and investigations undertaken by authorities, no charges or penalties resulted from the allegations. (Id., ¶¶ 44, 48-51, 55, 58, 64-66.)

Consistent with meetings held in August and November of 2014, id., ¶¶ 60, 68, Defendants on December 16 issued Resolution No. 2014-151, "A Resolution of Censure of Council Member Paula Danchuk by the Mayor and Council of the Borough of Mount Arlington, in the County of Morris, State of New Jersey" (the Censure). (Def. Motion, Ex. B., Censure, ECF No. 35-5; Pl. Motion, Ex. A, Censure, ECF No. 36-5.) The Censure provided that Defendants chose to censure Plaintiff "in lieu of filing a Complaint with the Local Finance Board for allegations of violations of the Local Government Ethics Law in order to avoid the expense of expending additional Borough funds; to cease the perpetuation of the discussion of these issues; and to memorialize the issues taken with Council Member Paula Danchuk." (Id., at 1.) The Censure offered a litany of Plaintiff's alleged misdeeds including, *inter alia*: applying for positions with the Borough while holding office and approaching the Borough Attorney for personal legal advice regarding the same; disclosing confidential information in connection with law enforcement contract negotiations; filing unsubstantiated complaints with the MCPO without notice to Defendants and thereby causing the Borough to incur expenses in defense and investigation; "[r]etaliating against the Borough by contacting the press to accuse the Borough Mayor and Council of 'bullying'" in their

filing of an ethics complaint (which was later withdrawn); discussing private Borough matters publicly and corresponding with the public on such matters so as to make communications discoverable; and "perpetuat[ing] [CARMA's] allegations that the Borough does not act in a transparent nature." (Id., at 1-3.) The Censure concluded:

> WHEREAS, the Mayor and Council of the Borough of Mount Arlington have on numerous occasions requested that Council Member Paula Danchuk refrain from secretive behavior; filing unnecessary complaints without discussing her personal beliefs with the entire council; causing the Borough to defend and prosecute issues that should have been discussed at the council meeting; cease from behavior unbecoming of a Council Member; and to work with the Mayor and Council in a professional manner; and
>
> WHEREAS, Council Member Paula Danchuk has refused these repeated requests; continues to behave in a manner detrimental to the Borough; and frustrates the process of the council meetings; and
>
> NOW, THEREFORE BE IT RESOLVED, that Council Member Paula Danchuk is hereby censured for her behavior[.]

(Id., at 4.)

On January 28, 2015, Plaintiff filed suit alleging that the Censure was passed over her objections without legally sufficient notice, "publicly malign[s] her character[,]" and is "rife with false allegations[.]" (Compl., ECF No. 1-1, ¶¶ 6-17.) Plaintiff alleges that the Censure violates her federal and state due process rights, is void as overbroad and vague, is unenforceable as pre-empted, violates her federal and state rights to free speech, is arbitrary and capricious, and is null for want of adequate notice. (Id., Counts I-VII, ¶¶ 18-49; Def. Statement of Facts, ECF No. 35-2, Pl. Resp. to Def. Statement of Facts, ECF No. 40, ¶ 4.) As to each claim, Plaintiff asks this Court to vacate the Censure with prejudice and award attorneys' fees and costs. (Id.) Defendants generally argue that these claims are not cognizable in the context of a censure, the parties

respectively maintain that summary judgment should be entered in their favor, and the Court addresses these claims and arguments in turn.[1]

## II. Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof [. . .] the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

---

[1] The parties briefly dispute whether Plaintiff adequately pleaded her federal causes of action, insofar as her Complaint cites no federal statute, and Plaintiff seeks leave to amend in the event the Court finds an infirmity in this regard. See Def. Opp., ECF No. 39, at 31-32; Pl. Reply, ECF No. 46, at 5-6. The Court finds that Plaintiff adequately asserted her claims and allegations, and thus they are ripe for consideration on the competing motions for summary judgment.

The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations [. . .] and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

## III. Discussion

The parties agree that summary judgment is appropriate, and likewise agree that the Court should focus its inquiry on the text of the Censure. (Pl. Motion, ECF No. 36-1, at 22-24; Def. Motion, ECF No. 35-1, at 8-14.) In addition to the Censure itself, the parties obtained discovery from the principal actors in this matter, including Plaintiff, her husband, a member of CARMA, a law enforcement officer, and a Councilmember. See ECF Nos. 35-36. While the parties disagree as to whether their grievances with each other were justified, such facts are immaterial because the parties agree as to the terms of the Censure and, as discussed below, the Censure does not give rise to cognizable claims.

### A. Federal and State Due Process Claims (Count I)

Plaintiff first alleges that her due process "rights were violated by the censure resolution which was passed by a bias[ed] and partial government body damaging her reputation with no opportunity for her to defend herself or confront her accusers." (Compl., ECF No. 1-1, ¶ 20.) Plaintiff further contends that, in imposing the Censure, Defendants avoided giving her "due

process by explicitly and intentionally avoiding New Jersey's Local Government Ethics Law, NJSA 40A:9-22.1, et seq., which was created with the specific intent and design to provide constitutionally adequate due process rights to local elected officials[.]" (Id., ¶ 21.) In particular, Plaintiff argues that she was denied "notice of the allegations, an impartial hearing before an impartial tribunal, the opportunity to confront her accusers, and the opportunity to present a defense." (Id., ¶ 22.)

Defendants contend that "Plaintiff's Complaint is part of Plaintiff's ongoing feud with [Defendants] and presents a nonjusticiable political question under the Federal and State Constitutions [and] Plaintiff has not and cannot demonstrate that [Defendants] deprived her of any property right or interest protected by" either due process clause. (Def. Motion, ECF No. 35-1, at 5.) Defendants further argue that Plaintiff fails to articulate a due process claim because she identifies no deprivation of property or grievous loss. (Id., at 15-20.) On this point, Defendants emphasize that the Censure "has no legal effect and cannot constitute an injury triggering Due Process protections." (Def. Opp., ECF No. 39, at 18.)

The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). Thus, the Court must examine first whether the interest claimed is one afforded protection under the Fourteenth Amendment and, if so, what procedures apply. Ingraham v. Wright, 430 U.S 651, 672 (1977); Hill v. Borough of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006) (citing Wisconsin v. Constantineau, 400 U.S. 433, 510 (1971)). And, while the liberty to pursue a calling or occupation is secured by the Fourteenth Amendment, an individual does not

have a protected property interest in reputation alone. Thomas v. Independence Tp., 463 F.3d 285, 297 (3d Cir. 2006) (citations and quotations omitted). Due process claims premised upon reputational harm accordingly must pass the "stigma plus" test such that a loss of reputation must be coupled with some other tangible interest. Paul, 424 U.S. at 701 (concluding that there exists "no constitutional doctrine converting every defamation by a public official into a deprivation of liberty" for due process purposes and noting that one's employment may constitute requisite separate interest); Hill, 455 F.3d at 236-38 (collecting cases in addressing whether deprivation suffered by plaintiff was "sufficiently weighty to satisfy the 'plus' requirement").

Plaintiff occupied an elected position and drew the ire of her cohorts, in pertinent part, for her complaints about them. Defendants thereafter publically memorialized this ire in the Censure. Plaintiff asserts that the Censure "had its intended effect[, with her] losing sleep, suffering emotional pain, being excluded from the Committee meeting for her assigned Borough Committees, having her voice quashed and becoming a figure head for the remainder of her Council term before the damage to her reputation caused her to lose the election for her third term." (Pl. Motion, ECF No. 35-1, at 7; Pl. Opp., ECF No. 40, at 16-17.) Plaintiff's complaint encompasses such allegations only insofar as she characterizes the Censure as "retaliation" and refers to her "publicly damaged [ . . .] political, professional, and personal reputation" as well as her "malign[ed] character[.]" (Compl., ECF No. 1-1, ¶¶ 7, 11, 35, 41, 45.)

On consideration of the particular circumstances presented and with keen attention paid to the terms of the Censure, it cannot be concluded that Plaintiff has satisfied the "stigma plus" test and thereby identified a liberty interest to which due process protections apply.[2] Even considering the totality of Plaintiff's assertions gleaned from pleadings, briefs, and testimony, Plaintiff's

---

[2] The parties agree that the "stigma plus" test applies here and that reputational harm is insufficient for a due process claim. (Def. Motion, ECF No. 35-1, at 16-17; Pl. Opp., ECF No. 40, at 16-17.)

allegations are properly characterized as bare, unsubstantiated, and therefore insufficient to implicate due process.

First, "[t]o satisfy the 'stigma' prong of the ['stigma plus'] test, it must be alleged that the purportedly stigmatizing statements(s) 1) were made publicly, and 2) were false." Hill, 455 F.3d at 236. Although Plaintiff describes the Censure as "rife with false allegations," Compl., ¶ 6, she has failed to demonstrate through competent evidence that the contents of the Censure were false. At the very least, such veracity or lack thereof remains an open question, as Defendants stand by the contents of the Censure and supply credible evidence in support of their position. Thus, Plaintiff has not shown stigma to her reputation.

As to the "plus" prong, however, there is no such outstanding factual dispute and Plaintiff cannot prevail. That is, putting aside the question of stigma, Plaintiff has not shown deprivation of some additional right or interest. Plaintiff suggests, seemingly by reference to Hill, that she satisfies the "plus" requirement through her re-election loss, emotional difficulty caused by the Censure, poor treatment in the community, and status as a lame-duck official. (Pl. Opp., ECF No. 40, at 16-17.) Plaintiff offers no case law to support her contention that these allegations are sufficient, and Defendants counter that "Plaintiff has failed to present evidence of any injury other than the perceived harm to her reputation." (Def. Opp., ECF No. 39, at 12-14.) The Court agrees. Hill is distinguishable because it involved the sufficiency of the allegations on a motion to dismiss where the plaintiff adequately stated a claim based on constructive or actual termination—neither of which is alleged here. See 455 F.3d at 236-239. Moreover, the Court in Hill collected cases with factual scenarios more friendly to plaintiffs than here that nonetheless did not satisfy the "plus" requirement. Id., at 238 (in employment context, "plus" not met in cases where plaintiffs were suspended with pay, reprimanded and disciplined but not suspended, had duties changed, or lost

volunteer position); see also Sturm v. Clark, 835 F.2d 1009, 1012-13 (3d. Cir. 1987) (rejecting reputation claim where attorney was not denied opportunity to see or pursue clients held in custody and despite allegation that defendants characterized her as "disruptive and unprofessional" to the detriment of her practice). In view of Plaintiff's scant allegations, summary judgment in Defendants' favor is appropriate. See Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 971 (9th Cir. 2010) (stating that "allegations of 'psychological trauma" are not sufficient to satisfy Paul's 'stigma-plus' test" and citing Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008) for the proposition that "humiliation, embarrassment, and emotional distress are not cognizable protected interests under Paul").

Application of state-specific due process case law warrants the same conclusion. In New Jersey, "[w]here a person's good name or reputation are at stake because of what the government is doing to that person, [. . .] sufficient constitutional interests are at stake[]" such that the inquiry looks for "a protectible interest in reputation without requiring any other tangible loss." Doe v. Poritz 142 N.J. 1, 104-05 (N.J. 1995) (citing Grodjesk v. Jersey City Medical Ctr., 135 N.J.Super. 393, 411-12 (Ch.Div. 1975)). The inquiry, however, remains fact-intensive, id., and reputational harm must be more than *de minimis*. In re L.R., 321 N.J. Super. 444, 460 (N.J. Super. Ct. App. Div. 1999) (stating that lenient state standard "does not mean that a liberty interest is implicated anytime a governmental agency transmits information that may impugn a person's reputation"). This apparently more liberal standard nonetheless does not rescue Plaintiff's claims, as she offers modest and unsubstantiated allegations of reputational harm. In Grodjesk, for example, the Court found that the "censure by the [hospital's] executive committee has unquestionably damaged plaintiffs' reputation and their professional standing as oral surgeons." 135 N.J.Super. at 412-13. Moreover, in Doe v. Poritz, the Court reiterated that a heightened sex offender designation "inflicts

a greater stigma than that resulting from the conviction for a sex offense, when there is no such classification" and noted that one's "liberty interest is more significant" when "prior undisclosed criminal history and his new classification become [publically] known." 142 N.J. at 105-06. Both cases are therefore distinguishable by the comparatively weighty interests and harm at stake; Plaintiff, by contrast, presents no evidence of endangered livelihood or societal ostracization. In particular, she only speculates that her re-election loss is causally connected to the Censure and fails to supply competent evidence of her diminished community standing. Summary judgment in Defendants' favor on this claim, accordingly, is appropriate.

B.   **Federal and State Free Speech Claims (Counts IV and VI)**

Plaintiff claims that Defendants censured her "for constitutionally protected speech, political speech and affiliation, and complaints to the" MCPO and asserts that the Censure unconstitutionally burdens her rights and the rights of other elected officials "to communicate protected expression." (Compl., ECF No. 1-1, ¶¶ 34-36, 43; Pl. Motion, ECF No. 36-1, at 37-40.) Plaintiff adds that the Censure violates the New Jersey Constitution because it infringes "the right to freely speak, affiliate, write, and publish one's sentiments absent abuse." (Id., ¶ 37.) Plaintiff emphasizes the retaliatory character of the Censure as well as how Defendants "aggressively and angrily derided" her in relation to her complaints to the MCPO. (Id., ¶¶ 43-45.) Plaintiff also avers that the Censure "functions to unconstitutionally regulate [her], and other current and future elected office holders, for constitutionally protected and lawful actions and speech, the [e]ffect of which may deter or chill constitutionally protected speech or political affiliation[.]" (Id., at ¶ 25.)

Defendants argue that these counts must fail because "Plaintiff has not presented any evidence demonstrating that she was subjected to a retaliatory action by the Governing Body that would deter a person of ordinary firmness from exercising his or constitutional rights." (Def.

Motion, ECF No. 35-1, at 27; Def. Opp., ECF No. 39, at 27-28.) Defendants emphasize that the Censure "is devoid of any penalties and does not subject Plaintiff to any punishment." (Id.)

To succeed on a retaliation claim under the First Amendment or the New Jersey Constitution,[3] a plaintiff must show "1) constitutionally protected conduct, 2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and 3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas, 463 F.3d at 296 (citations omitted). The Court undertakes a fact-intensive inquiry to determine whether one's First Amendment rights were violated by retaliatory conduct, such that the Court considers "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. Industries v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000) (quotations and emphasis omitted)). Importantly, the nature of the retaliatory act must be more than trivial and there can be no violation where the actions were merely criticism, false accusations, or verbal reprimand. Id.

Consistent with the foregoing due process analysis, it must again be concluded that the Censure does not possess the legal significance that Plaintiff ascribes to it. However detailed in its recitation of Plaintiff's alleged misdeeds it may be, the Censure is not a charging document and contemplates no penalties or prospect thereof. By its terms, the Censure provides that it was issued "in lieu of" an ethics complaint and thereby expressly disavows any pursuit of formal process by Defendants. Without more, the purported retaliation is mere *de minimis* criticism, accusations, or reprimand insufficient to deter a person of ordinary firmness from exercising constitutional rights

---

[3] "Because these protections are 'generally interpreted to be co-extensive with the First Amendment,' the federal analysis applies to the New Jersey claims as well." Farneski v. Cty. of Hunterdon, 916 F. Supp. 2d 573, 582, n.10 (D.N.J. 2013) (quoting New Jersey v. Schad, 160 N.J. 156, 733 A.2d 1159, 1169 (1999)).

and, hence, does not run afoul Plaintiff's federal and state rights to free speech. In particular, it must be emphasized that Plaintiff offers no analogous case law to support her conclusions and likewise offers bare and speculative allegations as to the chilling effect of the Censure. Indeed, the weight of the authority supports Defendants' position that summary judgment should be entered in their favor on these claims. For example, a Court in this District granted summary judgment against a plaintiff where "the censure resolution carried no consequences for [his] speech" and "merely voiced the council's collective disapproval over his comments." Page v. Braker, 2007 WL 432980, at *3 (D.N.J. Jan. 31, 2007). That Court further noted that it could not "see how a mere showing of disapproval, expressed by a councilman's colleagues, and lacking any real force or punishment, could prevent a person of ordinary firmness from exercising his constitutionally protected speech." Id. So too, here, as the Censure is an expression of Defendants' disapproval, lacks real force or punishment, and accordingly does not equate to a retaliatory act.

Similarly, there is no infirmity with the Censure insofar as it indicates Defendants' view that Plaintiff committed ethical violations but that a formal complaint would not be pursued. A retaliatory act may take the form of "a threat, coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow" provided such an act is not minimal. Mirabella v. Villard, 853 F.3d 641, 650-51 (3d Cir. 2017) (citations and quotations omitted). Again, the Censure is minimal in that it provides no punishment or threat of the same. Rather, it is an explicit and straightforward admonishment for alleged prior behavior that is insufficient to constitute a retaliatory action. See id. (holding that, while a prohibition of further government contact constitutes a retaliatory act, a threat to move for sanctions in the event of litigation does not) (citing Novoselsky v. Brown, 822 F.3d 342 (7th Cir. 2016) for its "holding that there was no retaliatory

act where government official filed an attorney disciplinary complaint against the plaintiff and publicly accused him of litigiousness").

This result comports with cases from other jurisdictions. Faced with a similar scenario, the Tenth Circuit affirmed a grant of summary judgment and found that a censure issued by a board of trustees regarding one of its members did not trigger First Amendment scrutiny where the board "sought only to voice their opinion that [plaintiff] violated the ethics policy and to ask that she not engage in similar conduct in the future[]" and where "[t]heir statement carried no penalties" or deterrence. Phelan v. Laramie Cty. Cmty. Coll. Bd. of Trustees, 235 F.3d 1243, 1247-49 (10th Cir. 2000); see also Zilich v. Longo, 34 F.3d 359, 363-64 (6th Cir. 1994) (holding city council resolution expressing disapproval of a former council member did not violate the First Amendment because it was not law and contained no penalty). Summary judgment is therefore appropriate in favor of Defendants on Plaintiff's free speech claims.

**C.     Remaining Claims (Counts II, III, V, VII)**

In the remaining Counts, Plaintiff offers additional claims relating to the Censure. First, Plaintiff objects to the Censure on the basis of vagueness and overbreadth while suggesting that such an "overbroad governmental action imposes punishment[]" and that it violates her federal and state due process rights "by prohibiting acts expressed in terms so vague that reasonable people of ordinary intelligence might apply it differently." (Compl., ECF No. 1-1, Count II, ¶¶ 25-27.)

Next, by reference to NJSA 40A:9-22.1, et seq., Plaintiff contends that New Jersey "has adopted comprehensive laws regulating and pre-empting [Defendants] from acting as prosecutor, judge, and jury without properly investigating and holding fair and impartial public hearings on allegations like those contained in the" Censure. (Compl., ECF No. 1-1, Count III, ¶ 29.) Plaintiff points to the terms of the Censure reflecting Defendants' cost-conscious decision to issue the

Censure "in lieu filing a Complaint with the Local Finance Board for allegations of violations of the Local Government Ethics Law" to argue that Defendants "impermissibly attempted to control areas pre-empted by the State statutes [and that] the censure is thus *ultra vires* and unenforceable[.]" (Id., ¶¶ 30-32.)

Plaintiff also asserts that the Censure must be vacated as arbitrary and capricious because it was a "wholesale abuse [of] government powers" that was passed without "a substantive investigation" by the "politically biased" Defendants without adequate notice. (Compl., ECF No. 1-1, Count V, ¶¶ 39-41.) Relatedly, Plaintiff argues that she was "entitled to proper notice of the charges and the hearing." (Id., Count VII, ¶¶ 47-49.)

Plaintiff offers various related arguments in support of these claims, including: Defendants improperly circumvented the state ethics law and its mandated procedures; the "police power expressed" in the Censure punished Plaintiff "for conduct no person of ordinary intelligence could discern[;]" and Defendants do "not clearly define what conduct is punishable" in the Censure. (Pl. Motion, ECF No. 36-1, at 27-44; Pl. Reply, ECF No. 40, at 13-22.)

The parties' arguments with respect to these remaining claims concern the scope of Defendants' power and the nature of the Censure; their arguments address statutes concerning borough councils and ethics complaints as well as case law applying the same. Plaintiff construes Defendants' power narrowly, such that they exceeded their authority in passing a punitive resolution that required certain specificity and accompanying procedures—or a different issuing authority altogether. (Pl. Opp., ECF No. 40, at 19; Pl. Reply, ECF No. 46, at 1-2.) In particular, Plaintiff cites the statute concerning borough governance for the following limited "[p]owers of the council:"

> pass, adopt, amend and repeal any ordinance or, where permitted, any resolution for any purpose required for the government of the municipality or for the accomplishment of any public purpose for which the municipality is authorized to act under general law[.]

(Pl. Opp., at 19. (citing N.J. Stat. Ann. § 40A:60-6(b)(1)).)

Defendants, on the other hand, maintain that the statutes relied upon by Plaintiff do not exhaustively define their powers and leave ample room for Defendants to issue—as they did with the Censure—an opinion or otherwise legally inconsequential declaration. (Def. Motion, ECF No. 35-1, at 19-26, 38-40; Def. Opp., ECF No. 39, at 18-23; Def. Reply, ECF No. 45, at 21-27.) Defendants thus argue that notions of vagueness, overbreadth, and notice are wholly inapplicable to the Censure. (Id.) To support their view that the Censure was permissible, Defendants stress not only that the Censure was an opinion unbounded by particular grants of authority but also that the Ethics Law's non-exclusivity is evidenced by its proviso that "[t]he remedies provided herein are in addition to all other criminal and civil remedies provided under the law." N.J. Stat. Ann. § 40A:9-22.10(c).

Lastly, the parties disagree as to the import of decision from the New Jersey Supreme Court, wherein a treatise was cited favorably as follows:

> An ordinance is distinctively a legislative act; a resolution, generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality.

Inganamort v. Borough of Fort Lee, 72 N.J. 412, 418 (1977) (citations omitted).

Against this backdrop, these claims fail for substantially the same reasons as the due process and free speech claims. First, there is no basis in the statutes or case law to deprive Defendants of their ability to express a view as limited as the one set forth in the Censure. It again bears emphasizing that Defendants did not impose punishment, let alone acted as judge or jury in

doing so; Plaintiff was free to exercise her discontent with Defendants, and indeed did so with aplomb over a sustained period. Moreover, the plain language of the statutes does not reasonably support the conclusion that Defendants were foreclosed from acting as they did and were constrained to act in other, more formal ways. Instead, the statutes delineate the power of borough councils and the process of adjudicating ethics complaints but are quite understandably silent as to those actions that have no actual legal effect; to hold otherwise would be to produce the absurd result that a council may only speak or operate in the precise manner provided by statute—at the cost of committing a constitutional violation.[4] To be sure, were the circumstances changed and were Defendants to mete out punishment through a censure, then it may be that the interplay between the statutes applicable to borough governance and ethics complaints would command a different result. But that is not the case here and, thus, pre-emption does not apply. Similarly, Plaintiff presents no cognizable claim on the basis of vagueness, overbreadth, and notice because, simply put, none of these principles is implicated by the Censure. The Censure, being something that imposes nothing other than assertions without punishment, need not conform to such constitutional dictates by way of precision or procedure. Summary judgment, therefore, is appropriate for Defendants on these Counts.

## IV. Conclusion

As set forth herein, Defendants' motion for summary is granted and Plaintiff's is denied.[5] An appropriate Order follows.

---

[4] In reply, ECF No. 46, Plaintiff submits a comprehensive recitation of instances in which a resolution, by statute, serves a particular cognizable legal purpose. Although resolutions in those other areas no doubt embody a certain power, Plaintiff's argument ignores the *content* of the resolution here, which is to say that the Censure contains nothing except laments (as to Plaintiff's alleged past behavior) and directions (as to Plaintiff's prospective behavior). The Censure achieves and memorializes nothing else, which stands in stark contrast to, for example, a resolution as authorized by statute that permits a county to create a public sewerage.

[5] The Court, accordingly, declines to address the parties' arguments regarding the political question doctrine.